**Keith Emery JONES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–92–00161–CR.

Court of Appeals of Texas, Houston (1st Dist.).

March 21, 1996.

Ken J. McLean, Houston, for Appellant.

John B. Holmes, Jr., Karen A. Clark, Bill Hawkins, Houston, for Appellee.

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas, participating by assignment.

Before WILSON, O'CONNOR and PRICE *, JJ.

## OPINION ON REMAND FROM THE TEXAS COURT OF CRIMINAL APPEALS

WILSON, Justice.

In our original opinion, we found that the trial court erred in not submitting a jury charge on the lesser included offense of robbery, and reversed and remanded.[1] The Court of Criminal Appeals has remanded this case to this Court for reconsideration in light of its opinion in *Bignall v. State*, 887 S.W.2d 21 (Tex.Crim.App.1994). We find nothing in *Bignall* that requires a different disposition. We again reverse and remand.

A jury found appellant, Keith Emery Jones, guilty of aggravated robbery and assessed punishment at 15-years confinement. In seven points of error, appellant asserts: the trial court erred in refusing his requested jury instruction; he was denied effective assistance of counsel; and the trial court erred in overruling his trial counsel's objection to a portion of the prosecutor's closing argument.

### Factual background

At about 10:30 p.m. on March 12, 1991, Irma Guajardo and her sisters Maria and Laura were on their way home from visiting their cousin. Irma was driving the family's 1983 brown Ford custom van. She pulled into a convenience store parking lot. She went into the Stop–N–Go to buy her mother a Coke, leaving her sisters in the van. A few moments later, appellant—who had been nearby—got into the van on the driver's side. Maria and Laura, screaming, got out of the van and appellant drove away. The State alleged appellant stole the van at gunpoint.[2] Appellant admitted he took the van without the Guajardos' permission, but raised the defense of necessity. Appellant also denied he used a gun to gain possession of the van.

1. *Jones v. State*, 888 S.W.2d 869 (Tex.App.— Houston [1st Dist.] 1994), *remanded*, 899 S.W.2d 688 (Tex.Crim.App.1995).

2. Maria was the complainant in the indictment.

## 1. The State's witnesses

The Guajardo sisters testified that when they pulled up to the Stop–N–Go, Irma turned off the ignition, left the keys in the ignition, got out of the van, and closed the door behind her. The driver's side window was partially open. Maria was sitting in the front passenger seat; Laura was sitting directly behind her.

While Irma was in the store, Maria noticed appellant. He walked to the bus stop, then to the photo studio next to the Stop–N–Go, where he stood for a while. He then walked over to the van, and circled it. He walked up to the driver's side, and suddenly stuck his hand in the window. He had a gun. Maria leaned over and tried to roll up the window. Appellant put the gun to her forehead and told her to get out of the van or he would kill her. Maria felt the cold metal tip of the gun against her skin.

Maria screamed, "He's got a gun," and got out of the van. At first, Laura thought her sister was joking, but she saw the hand poking through the window. She reached for the car keys, but appellant pointed the gun at her, and said, "Get out or I'll kill you." Laura got out of the van.

Maria ran into the convenience store, screaming, and told Irma that someone was stealing the van. Irma ran from the store, and jumped on the running board of the van. She reached in the driver's window and tried to grab the keys. Appellant put his hand on her face, pushed her from the van, and drove off. Hysterical, the three sisters ran to the street, screaming for help.

David Detcher testified he was on his way home from work when he saw a commotion in the Stop–N–Go parking lot. He saw the Guajardo van drive away and drove over to the Guajardos. They told him that someone stole their van at gunpoint. He said he would follow, and they asked him if they could come along. Detcher and the three young women took off after appellant, who was speeding away. Although he lost sight of the van several times during the chase, he caught up with the van after appellant had been stopped by the police.

As they were chasing the van, Detcher and the Guajardos saw Houston Police Officer Clifford Strickland; they screeched to a halt in front of him and told him about the incident. Officer Strickland testified he got into his patrol car and gave chase. A number of other patrol cars also joined the pursuit. Officer Strickland followed the van until the appellant, after a 13–minute car chase through business and residential streets, came to a stop when he was blocked in by police cars. Police officers searched the van, but did not find a gun. They also made a cursory search of the chase route for the gun, but did not find one.

## 2. Appellant's testimony

Appellant testified he went to the Stop–N–Go to call a cab. He walked over to Church's Fried Chicken and placed an order. While he was waiting for his chicken, he walked to the bus stop to wait for his cab. A red Camaro drove up. Someone in the car aimed a rifle at him. Fearing for his life, he ran toward the Stop–N–Go. He saw the brown van with its driver's door open. He ran up to the door. The key was in the ignition and the motor was running. He did not see Laura or Maria until he got to the door. Getting into the van, appellant yelled, "They're after me. They're after me. I've got to go. I've got to go." The young women in the van began to scream and got out. He denied having a gun or threatening the women. He stated he planned to return the van to the Guajardos or to the authorities after he was safe.

### Lesser included offense

In his first point of error, appellant asserts the trial court erred in refusing his requested jury instruction on the lesser included offense of robbery.

The charge instructed the jury on aggravated robbery and theft, and provided that if the jury believed beyond a reasonable doubt that appellant was guilty of one of the offenses, but had a reasonable doubt concerning which offense he committed, it must find him guilty of the lesser offense of theft. The charge also instructed the jury on the law of necessity. Appellant's defense counsel specifically objected that the charge did not

include the lesser offenses of robbery, aggravated assault, or assault by threat.

An offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

Tex.Code Crim.P.Ann. art. 37.09 (Vernon 1981).

A person commits robbery if, in the course of committing theft, and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code Ann. § 29.02(a)(2) (Vernon 1994). If, in the course of committing a robbery, a person uses or exhibits a deadly weapon, he has committed aggravated robbery. Tex. Penal Code Ann. § 29.03(a)(2) (Vernon 1994). Robbery is a lesser included offense of aggravated robbery.

■■■ This Court must apply a two-prong test for determining whether a defendant is entitled to a charge on a lesser included offense. First, the lesser included offense must be included within the proof necessary to establish the offense charged. Second, some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty of only the lesser offense. *Bignall*, 887 S.W.2d at 23; *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex.Crim.App.1993). In determining whether a defendant is entitled to a charge on a lesser included offense, this Court must consider all the evidence presented. *Bignall*, 887 S.W.2d at 23; *Lugo v. State*, 667 S.W.2d 144, 147 (Tex.Crim.App.1984).

■■■ The issue is whether *any* evidence exists in the record that would permit a rational jury to find that the defendant is guilty only of the lesser included offense. *Bignall*, 887 S.W.2d at 23. Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge. *Id.* A jury, as the trier of fact, is entitled to believe all or part of the conflicting testimony proffered and introduced by either side. *Id.* at 24. The jury can selectively believe all or part of the evidence admitted at trial. *Id.* It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence directly germane to a lesser included offense for the factfinder to consider before an instruction on a lesser included offense is warranted. *Id.*

■■■ The Court of Criminal Appeals has articulated the following test with respect to the testimony of a defendant: if a defendant either presents evidence that he committed no offense or presents no evidence, and there is no evidence otherwise showing he is guilty only of a lesser included offense, then a charge on a lesser included offense is not required. *Id.* (quoting *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex.Crim.App.1985)).

■■■ We find the second prong of the *Rousseau* test—that some evidence must exist in the record that would permit a jury rationally to find that appellant, if guilty, is guilty only of the lesser included offense of robbery—has been met. Maria and Laura testified that appellant used a gun when he took the van, and that he threatened their lives. Appellant, however, stated he took the van out of necessity, he intended to return the van to its owners, he did not threaten the Guajardo sisters, and he did not have a gun. Officer Strickland testified that after appellant was taken into custody, police officers searched the van, but did not find a gun. Nor did they find a gun along the chase route.

The trial court gave an instruction on aggravated robbery. To find appellant guilty of aggravated robbery, the jury had to believe the sisters' testimony that appellant used a gun, and had to disbelieve appellant's testimony about taking the van out of neces-

sity. The trial court also gave an instruction on theft, which would have allowed a conviction for that offense if the jury had disbelieved appellant's testimony about taking the van out of necessity, but had a reasonable doubt that appellant used a gun or made threats. An instruction on robbery would have allowed a conviction for that offense if the jury disbelieved appellant's claim of necessity, believed the Guajardo sisters were threatened or placed in fear of injury, but had a reasonable doubt about the presence of a gun (based on the appellant's testimony coupled with the police officer's testimony that no gun was found).[3] The trial court thus erred in refusing a charge on the lesser included offense of robbery. We sustain point of error one.

If the error in the charge was the subject of a timely objection in the trial court, reversal is required if the error is calculated to injure the rights of the defendant; this means no more than that there must be some harm to the accused from the error. *Mitchell v. State*, 807 S.W.2d 740, 742 (Tex.Crim. App.1991). Appellant was clearly harmed because the jury was not allowed to consider the lesser included offense of robbery.

The trial court's judgment is therefore reversed and the case is remanded. In light of our disposition of this point, we need not address appellant's remaining points of error.

---

**3.** *See Bignall*, 887 S.W.2d at 24 (case involved more than mere denial of commission of offense; evidence negating presence of gun was presented from several sources).