Opinion issued November 2, 2006






 












In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00655-CR
____________

SERGIO GUADALUPE MORALES, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from County Criminal Court at Law Number 1
Harris County, Texas
Trial Court Cause No. 1276359





MEMORANDUM OPINION
          A jury found appellant, Sergio Guadalupe Morales, guilty of the offense of
unlawfully carrying a weapon


 and assessed his punishment at confinement for 365
days and a $4,000 fine. In two points of error, appellant contends that the evidence
is legally and factually insufficient to support his conviction. 
          We affirm. 
Factual Background
          United States Postal Service mail carrier T. S. Earley testified that, on
December 14, 2004, as she was delivering mail on Illinois Street in Baytown, she
heard what “sounded like two men and a woman arguing” followed by two series of
gunshots. Earley dove to the ground when she heard the shots. Although she could
not identify the gunman or the people who were arguing, she did see that the gunshots
came from a small white car containing as many as three persons. Earley believed
that the driver of the car had fired the shots, but she could not remember whether she
saw the gun.
          Rafael Morales, appellant’s nephew, testified that, on December 14, 2004,
while at the home of his aunt, Maria Morales, with her and his cousin, Guadalupe
Morales, appellant “passed by” the home. At his aunt’s request, Rafael asked
appellant to leave. Appellant agreed and turned around to get into a car. Rafael
explained that “[t]here was never an argument involved in this.” When appellant
turned to leave, Rafael saw “like the form . . . of a pistol” in appellant’s belt. 
          Rafael initially testified that, after the shooting, his aunt told him that appellant
had fired shots out of a car window. Although he did not see the shooting, Rafael,
after repeated questioning, later explained, “[w]hat I told the officer was that
[appellant]—he never threatened me . . . [h]e never pointed the gun at me . . . [h]e had
the gun with—with him.” Although he saw appellant with a gun, he never saw him
shoot the gun. On cross-examination, Rafael stated that he saw the shape of a
handgun in appellant’s belt, but he did not actually see the gun itself. He conceded
that he was not certain that it was a gun that he saw in appellant’s belt. Rafael also
stated that it was only after appellant got into his car and left that he turned around
and heard gunshots. However, he did not see who fired the gun. On re-direct
examination, when questioned regarding whether he previously testified that he saw
a gun, Rafael said “I told [counsel] that I- that I saw the gun. A- a- a form of a gun.”
          Harris County Assistant District Attorney Douglas Loper testified that, earlier
in the day, he sat in on a conversation between Rafael and Assistant District Attorney
Mekisha Walker. Loper stated that when Walker asked Rafael if he had seen
appellant with a gun on the day in question, Rafael responded that he had seen a gun
in appellant’s possession.
          Baytown Police Officer J. Lunsford testified that, on December 14, 2004, he
was dispatched to the home of Maria Morales and, when he arrived, he spoke to Mr.
Heflin, a witness at the scene. Heflin had reported to police that there were “shots
fired,” and he described the shooter’s vehicle as a “small wide compact car.” Heflin
described the shooter as a twenty to twenty-five-year-old Hispanic man with a
mustache. Heflin also told Lunsford that he thought that the front seat passenger fired
the gun. However, Heflin could not provide the license plate number of the car, and
he was unable to identify the shooter at a lineup several days after the shooting.
          Baytown Police Detective M. Coleman testified that, on December 14, 2004,
she responded to a call for “shots fired” at the Morales house. When she arrived at
the scene, she searched for the white, compact, four-door car. Although she was
unable to locate the car, Coleman found ten shell casings from a ten-millimeter
handgun on the road outside the house. Coleman explained that the casings were
never tested for fingerprints and a weapon was never recovered.
          Coleman further testified that Rafael told her that appellant had been
intoxicated when he arrived at the house and that when Rafael asked appellant to
leave, appellant pulled out a ten-millimeter handgun. When questioned whether
Rafael had told her that he only saw the outline of a gun, Coleman answered, “[n]o,
[Rafael] said that [appellant] actually pulled it out. Had it in front of him.” Rafael
told Coleman that appellant then got into the four-door, white, compact car, stuck the
pistol out of the window, and began shooting. Coleman stated that Rafael specifically
identified appellant as not only the person carrying the weapon, but also as the
shooter. 
Standard of Review
          We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. 
Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We note that
the trier of fact is the sole judge of the weight and credibility of the evidence. 
Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when
performing a legal sufficiency review, we may not re-evaluate the weight and
credibility of the evidence and substitute our judgment for that of the fact finder. 
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve any
inconsistencies in the evidence in favor of the verdict. Curry v. State, 30 S.W.3d 394,
406 (Tex. Crim. App. 2000).
          In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if proof of guilt is so obviously
weak as to undermine confidence in the jury’s determination, i.e., that the jury’s
verdict seems “clearly wrong and manifestly unjust,” or the proof of guilt, although
legally sufficient, is nevertheless against the great weight and preponderance of the
evidence. Watson v. State, No. PD-469-05, 2006 WL 2956272, at *8 (Tex. Crim.
App. Oct. 18, 2006). In performing a factual sufficiency review, we are to give
deference to the fact finder’s determinations, including determinations involving the
credibility and demeanor of witnesses. Cain v. State, 958 S.W.2d 404, 407 (Tex.
Crim. App. 1997). We may not substitute our judgment for the fact finder’s. Watson,
2006 WL 2956272, at *10.
Legal and Factual Sufficiency
          In his two points of error, appellant argues that the evidence is legally and
factually insufficient to support his conviction because “the State failed to prove
beyond a reasonable doubt that [he] had carried a fireman on or about his person.”
          A person commits the offense of unlawfully carrying a weapon if he
intentionally, knowingly, or recklessly carries on or about his person a handgun,
illegal knife, or club. Tex. Pen. Code Ann. § 46.02(a) (Vernon 2003). 
          Here, Earley and Heflin both testified that they heard gunfire. However,
neither was able to identify appellant as the person firing the gun. Although the
witnesses tended to describe the car from which the shots were fired in a manner 

consistent with Rafael’s description of appellant’s car, Earley and Heflin’s opinions
differed as to whether it was the driver or a passenger who had fired the gun. 
          Rafael’s testimony is inconsistent. Initially, he testified that there was no
argument between him and appellant and that he saw only the outline of a handgun
on appellant’s belt, not an actual gun. However, at another point, Rafael testified that
he did see the handgun on appellant, but that he never saw appellant fire the gun. 
Nevertheless, Coleman testified that Rafael told her that he saw appellant not only in
possession of the handgun, but that he also saw appellant fire the gun. Rafael did
make different statements to different people at different times, but he did, at some
point, indicate to investigating police officers that appellant did possess and fire a
ten-millimeter handgun. Although no fingerprints were found on the casings
recovered in front of Maria Morales’s house, the casings were from a ten-millimeter
handgun.
          Again, we note that a jury is free to believe or disbelieve all or any part of a
witness’ testimony. See Jones v. State, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998). 
To the extent that there was any contradictory evidence, the jury, as the trier of fact,
is the sole judge of the credibility of witnesses and the weight to be given to their
testimony. See Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Robles v.
State, 104 S.W.3d 649, 652 (Tex. App.—Houston [1st Dist.] 2003, no pet.). 
Additionally, a decision is not manifestly unjust merely because the jury resolved
conflicting views of the evidence in favor of the State. Cain v. State, 958 S.W.2d
404, 407 (Tex. Crim. App. 1997).
          Viewing all the evidence in the light most favorable to the jury’s verdict, we
conclude that a rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt. Furthermore, viewing the evidence neutrally, we
conclude that the evidence is not so obviously weak such that the jury’s verdict seems
“clearly wrong and manifestly unjust” or that the proof of guilt is against the great
weight and preponderance of the evidence. Accordingly, we hold that the evidence
is legally and factually sufficient to support appellant’s conviction.
          We overrule appellant’s two points of error. 
 

Conclusion
          We affirm the judgment of the trial court.
 
 
     Terry Jennings
     Justice
 
Panel consists of Justices Nuchia, Jennings, and Higley.
Do not publish. Tex. R. App. P. 47.2(b).